IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**RICKEY MITCHELL LaBLUE,**　　　　　　　　　　3:12-cv-00763- RE

　　　　　　Plaintiff,　　　　　　　　　　　　**OPINION AND ORDER**

　　v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

　　　　　　Defendant.

**REDDEN**, Judge:

Plaintiff Rickey Mitchell LaBlue ("LaBlue") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

1 - OPINION AND ORDER

## BACKGROUND

LaBlue filed his application for DIB on March 7, 2008, alleging disability since November 2, 2004, due to "[d]iabetes mellitus with neuropathy, coronary artery disease with hypertension, Fibromyalgia (and/or Chronic Myofascial Pain), Depression I am subject to constant overall body pain especially in back and feet. It has exacerbated my long term depression problem." Tr. 151. LaBlue was 53 years old on his alleged onset date. His application was denied initially and upon reconsideration. A hearing was held on July 19, 2010. The Administrative Law Judge ("ALJ") found him not disabled. LaBlue's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found LaBlue had the medically determinable severe impairments of diabetes melitus, fibromyalgia/chronic pain, and foraminal stenosis of the cervical spine. Tr. 31.

The ALJ found that LaBlue's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 13.

The ALJ determined LaBlue retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work, lifting and carrying 20 pounds occasionally and ten pounds frequently. Tr. 33. LaBlue can occasionally engage in reaching and lifting above the shoulder level with the non-dominant left upper extremity.

At step four, the ALJ found LaBlue could not perform his past relevant work, but that he retained the ability to perform other occupations. Tr. 37-8.

LaBlue argues that the ALJ erred by: (1) improperly assessing his transferable skills; (2) identifying one occupation he may perform; (3) improperly assessing his credibility; and (4) improperly assessing lay testimony.

## DISCUSSION

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

3 - OPINION AND ORDER

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton*, 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen*, 80 F3d at 1282.

The ALJ found Plaintiff's subjective allegations of disabling pain not credible. Tr. 34. The ALJ found Plaintiff's allegations not supported by the medical record. *Id.* The ALJ properly noted the comments of Drs. Thompson, Bassett, and Anderson and found Plaintiff's allegations of pain not consistent with the observations of the medical providers. Tr. 34, 522, 279, 243, 245, 281. The ALJ properly noted that Plaintiff failed to follow prescribed treatment. Tr. 36. The ALJ found evidence that Plaintiff's treatment was motivated by secondary gain, noted Plaintiff has a history of felony convictions, and alleged significant memory problems not consistent with psychological testing. Tr. 36. The ALJ identified clear and convincing reasons for finding Plaintiff less than fully credible.

## II. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give

reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff's domestic partner, Jean LaBlue, completed a questionnaire. Tr. 180-87. She noted Plaintiff used to work full time but now worked about an hour a day, he required reminders to take his medications, and was unable to stand long enough to prepare a meal. Tr. 181-82.

The ALJ noted Ms. LaBlue's testimony, and found her assertions regarding some of Plaintiff's activities contradicted Plaintiff's claim of disabling pain. Tr. 37. The ALJ rejected the social limitations described by Ms. LaBlue as inconsistent with Plaintiff's presentation to examining psychologist Paul Stoltzfus, Psy. D. Tr. 320-25.

The ALJ relied on contradictory medical evidence showing Plaintiff capable of work activity, and any error in evaluating the lay testimony was therefore harmless. *Molina v. Astrue*, 674 F.3d 1104, 1118-19 (9th Cir. 2012).

## III. Step Five

At step five of the sequential analysis the ALJ relied on the testimony of the vocational expert ("VE") and found Plaintiff able to perform the sedentary occupation of telephone solicitor. Tr. 38. The ALJ found Plaintiff limited to a reduced range of sedentary work and unable to perform his past relevant work as a retail salesperson, an arts and gifts salesperson, and a parts salesperson. Tr. 33, 37-38. Plaintiff would have been found disabled under Medical Vocational

Rule 201.06, except the ALJ found Plaintiff has skills from his past work as a parts salesperson which transfer to the sedentary, semiskilled occupation of telephone solicitor. Tr. 38.

### A. The ALJ's Reliance on One Occupation was not Erroneous

Plaintiff contends a "significant range" of work must be identified when transferable skills are material to the disability determination, citing 20 C.F.R. § 404, Subpt. P, App. 2, Rule 201.00(e), and that reliance on one occupation does not constitute a "significant range" under the Rule.

The Ninth Circuit articulated the five-step sequential process for determining whether a claimant is "disabled" in *Tackett v. Apfel,* 180 F.3d 1094, 1098-99 (9th Cir. 1999). The "grids" are applied at the fifth step of the analysis and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. The grids categorize jobs by their physical exertional requirements, and set out a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress: a claimant's age, education, previous work experience, and physical ability. For each combination of factors, the tables direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical exertional requirements. *Tackett,* 180 F.3d at 1101.

The grids are based on a claimant suffering from an impairment which causes limitations in meeting the strength requirements of jobs, i.e., exertional limitations. Non-exertional impairments, like pain, postural or manipulative limitations (difficulty reaching, handling, stooping) may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids. Thus the *Tackett* court held that "[t]he grids should be applied only

where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the grids." *Id.* at 1103. This bar on exclusive reliance on the grids is limited by the requirement that the nonexertional impairments must be significant enough to limit further the range of work permitted by exertional limitations, before precluding application of the grids.

When a claimant suffers only exertional limitations, the ALJ must consult the grids. *Lounsburry v. Barnhart,* 468 F.3d 1111, 1115 (9th Cir. 2006). Where a claimant suffers only non-exertional limitations, the grids are inappropriate and the ALJ must rely on other evidence. Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of nondisability in that circumstance.

Plaintiff contends the ALJ characterized his RFC as a limited range of sedentary work, but, by finding him capable of lifting up to 20 pounds occasionally and 10 pounds frequently, actually found him capable of light work.

Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Sedentary work generally requires standing and walking for "no more than about 2 hours of an 8-hour workday." SSR 83-10, *available at* 1983 WL 31251, at *5-6.

Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

The ALJ found Plaintiff retained the ability to lift more weight than is described by the regulations as sedentary, but was able to stand and walk for no more than two hours of an eight-hour workday. Tr. 33. The Commissioner asserts that the applicable rule is Rule 201.00, for sedentary work, while Plaintiff contends the ALJ found him capable of a reduced range of light work and therefore Rule 202.00(c) applies.

The ALJ credited Plaintiff's testimony that "he is limited in standing and walking to no more than two hours of an eight-hour workday." Tr. 37. On this record, I find the ALJ reasonably determined Plaintiff's residual capacity more accurately defined as sedentary than light.

Plaintiff contends application of the grids directs a finding that he is disabled, citing *Lounsburry*. In *Lounsburry*, the claimant was restricted to performing light work and had transferrable skills. *Id.* at 1116. The court found that Rule 202.07, from the grid table governing light exertion, applied and that Footnote 2 to Rule 202.07 expressly incorporated language from

8 - OPINION AND ORDER

Rule 202.00(c). *Id.* The result of this incorporation was that a person of advanced age with a high school degree who could do light work could only be found "not disabled" if her skills were readily transferable to a "significant range" of semi-skilled or skilled work. *Id.* at 1116-17. The court held that one "occupation" did not constitute a "significant range" and, because the ALJ had only identified one occupation, Lounsburry was "disabled." *Id.* at 1117.

In this matter, the ALJ found Plaintiff could perform a significant number of jobs existing in the national economy at step five, relying on vocational expert testimony, with the grid rules 201.07 and 201.15 acting as a framework for decision. Tr. 38-39. The ALJ cited grid rules 201.07 and 201.15 because Plaintiff's age covered both the "individual closely approaching advanced age" and "advanced age" during the relevant time period, Plaintiff had a high school education or more, was limited to sedentary work, and had developed skills that were transferable to other work. Tr. 38, 61. The ALJ relied on the VE's testimony in finding Plaintiff could perform work as a telephone solicitor, with 302,005 jobs existing in the national economy and 2,540 jobs existing in the State of Oregon, constituting a "significant number" under the law. Tr. 38, 62.

The Commissioner argues this matter is controlled by *Tommasetti v. Astrue,* 533 F.3d 1035 (9th Cir. 2008). The *Tommasetti* court expressly declined to extend the reasoning in *Lounsburry* to the sedentary grid rule. *Tommasetti,* 533 F.3d at 1143-44. Accordingly, in this case, a single occupation may satisfy the Commissioner's burden at step five. *See* 20 C.F.R. §§ 404.1566(b), 416.966(b)("Work exists in the national economy when there is a significant number of jobs (in one or more occupations)."

### B. The ALJ's Transferable Skills Finding

9 - OPINION AND ORDER

The ALJ asked the VE to consider a hypothetical individual 58 years old, with 12 years of education, able to lift 20 pounds occasionally and ten pounds frequently, who can stand or walk two hours out of eight, and is limited to occasional reaching above the shoulder with the non-dominant extremity, with past relevant work as a retail salesperson, an arts and gifts salesperson, and a parts salesperson. Tr. 60-61. The VE testified that such a person would be precluded from returning to his or her past work because that would require standing and walking in excess of two hours in an eight hour work day. Tr. 61. The VE testified that there were "easily transferable skills to sedentary work" because "[a] person who has had experience in the sales industry at a skilled level would possess skills that would include—communication skills including influencing and advising knowledge of the product, basic recordkeeping." *Id.* The VE testified that those transferable skills would apply but "[t]he only job in the sedentary work range would be that of a telephone solicitor." *Ibid*

The ALJ found Plaintiff had work skills from his past work as a parts salesperson and arts and gifts salesperson, including "influencing and advising, knowledge of the product, and basic record keeping." Tr. 38.

A "skill" is:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurement, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, *available at* 1982 WL 31389, at *2. "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.*

The regulations at 20 C.F.R. 404.1566(e) and 416.966(e) provide that the Commissioner will take administrative notice of "reliable job information" including from vocational experts.

Plaintiff argues he does not have any skills related to calling individuals on the telephone to offer them products. He contends the job of telephone solicitor is not an art, science, or trade, and "skills" as defined by the Social Security Administration are not required because a "skill" must give a person "a special advantage over unskilled workers in the labor market." SSR 82-41. The telephone solicitor position has an SVP of 3 and is semiskilled work. Tr. 38, 62. Plaintiff notes the VE did not testify that Plaintiff's transferable skills gave him a special advantage. However, there is no requirement that the ALJ obtain testimony from a VE on this point.

Plaintiff notes the VE testified telephone solicitor is a semi-skilled position with a specific vocational preparation ("SVP") of three. Plaintiff quotes a portion of SSR 82-41(2)(d), regarding semiskilled work, which provides that when a position is at the lower level of semiskilled work "[t]ransferability of skills is not usually found from this rather simple type of work. When job activities are at this minimal level of skill, an...[ALJ] can often, without assistance, make the determination that the worker has very little vocational advantage over an unskilled person and does not have transferable skills." However, the ALJ relied on the VE to determine that Plaintiff had transferable skills arising from his past work as a parts salesperson, a

skilled position with a SVP of five, and from his work as an arts and gifts salesperson, a semiskilled position with a SVP of four. Tr. 60-61.

The ALJ appropriately relied on the testimony of the expert to find substantial evidence that Plaintiff has transferable skills.

## CONCLUSION

For these reasons, the ALJ's decision that LaBlue is not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 26 day of September, 2013.

JAMES A. REDDEN
United States District Judge